Opinion issued March 11, 2004
     












In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00747-CV




JIMMY AND HILLARY BYNUM, INDIVIDUALLY AND AS NEXT
FRIENDS OF MINOR CHILDREN THOMAS AND CLARK BYNUM,
Appellants

V.

PRUDENTIAL RESIDENTIAL SERVICES, LIMITED PARTNERSHIP,
d/b/a MORAN, STAHL & BOYER; MORAN STAHL & BOYER, LIMITED
PARTNERSHIP, d/b/a PRUDENTIAL RELOCATION, d/b/a PRUDENTIAL
RELOCATION INTERCULTURAL SERVICES, LIMITED
PARTNERSHIP d/b/a PRUDENTIAL RELOCATION LIMITED
PARTNERSHIP, d/b/a PRUDENTIAL RELOCATION, LIMITED
PARTNERSHIP, d/b/a PRUDENTIAL RESOURCES MANAGEMENT AND
d/b/a PRUDENTIAL RESOURCES MANAGEMENT, LIMITED
PARTNERSHIP; PRUDENTIAL HOMES CORPORATION d/b/a
PRUDENTIAL RELOCATION; AND JOHN AND SUSAN MCNAMARA,
Appellees




On Appeal from the 164th District Court
Harris County, Texas
Trial Court Cause No. 2001-32585-A




OPINION ON MOTION FOR REHEARING

          On this day, the Court considered appellants’ motion for rehearing. The
motion is DENIED. However, we withdraw our previous opinion of November 10,
2003, and issue this opinion in its stead. Our judgment of November 10, 2003,
remains unchanged.
          Appellants, Jimmy and Hillary Bynum, individually and as next friends of their
minor children, Thomas and Clark Bynum, sued various Prudential entities,


 R&R
Inspection Service, Peverely Engineering Inc., Ray Kindsfather, and John and Susan
McNamara, appellees, asserting claims of breach of contract, breach of express and
implied warranties, violation of deed restrictions, violations of the DTPA, fraud,
violations of section 27.01 of the Texas Business and Commerce Code, negligence,
negligence per se, negligent misrepresentation, failure to provide disclosures required
by section 5.008 of the Texas Property Code, and strict products liability. 
Additionally, the Bynums sought the equitable relief of rescission, and a constructive
trust. 
          Prudential and the McNamaras filed both no-evidence and traditional motions
for summary judgment that were granted by the trial court as to all of the claims
raised by the Bynums against them. The Bynums’ claims against Prudential and the
McNamaras were then severed by the trial court from the Bynums’ claims against
remaining defendants so that the judgment disposing of the Bynums’ claims against
Prudential and McNamara would become final.
          The Bynums assert nine issues on appeal, which we reduce to seven issues for
the disposition of the case, contending that summary judgment against them was
improper because (1) the “as is” clause in the purchase agreement cannot be enforced
against the Bynums; (2) there is an issue of material fact as to whether there was a
breach of express and implied warranties; (3) there is an issue of material fact as to
whether, under section 5.008 of the Texas Property Code, they were entitled to
terminate the purchase of their home and recover monies paid; (4) there is an issue
of material fact as to whether the Bynums are entitled to the equitable relief of
recission under the doctrine of mistake; and (5) there is an issue of material fact as to
where Prudential or the McNamaras engaged in statutory fraud or negligent
misrepresentation. Additionally, the Bynums argue that the trial court erred in
refusing to grant their motion for partial summary judgment against the McNamaras
on their claim of negligence per se, and erred in denying the Bynums’ motion for
continuance.
          We affirm.
 
Facts
          We review the facts of this case taking all evidence in favor of the Bynums as
true. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). 
          In 1999, the McNamaras hired Ray Kindsfather to remodel their home over a
period of several months. Most of the work involved remodeling two bathrooms in
the house. The hall bath was enlarged by the removal of a wall, and a shower,
commode, and sink were added to it. Significant electrical and plumbing work was
done in both of the bathrooms, and new sewer lines were added to connect with
previously existing ones. 
          In early 2000, the McNamaras decided to sell their home. In April of 2000, the
McNamaras’ employer hired Prudential to help the McNamaras sell their home and
relocate to a new city. The McNamaras separately hired a third-party agent with
Martha Turner Properties to list the home for sale and represent their interests. The
McNamaras filled out and faxed to Prudential a “Homeowners Disclosure Statement,”
(HDS) provided by Prudential, for the purpose of aiding Prudential in the appraisal
and purchase process. In the HDS, one of the questions was as follows: “were any
structural additions, changes, or repairs made to the property by former owners
without obtaining all necessary permits and government approvals?” To that
question, the McNamaras answered “no.” The following question in the HDS asked
“have you made any structural additions, changes, or repairs to the property?” The
McNamaras answered “yes,” and next to the “yes” box wrote “remodeled bathrooms.” 
The third question asked “have you obtained all necessary permits and government
approvals?” To this question, the McNamaras wrote “N/A.” 
          The Bynums, who purchased the home from Prudential, received two section
5.008 disclosure statements on the home. See Tex. Prop. Code Ann. § 5.008
(Vernon Supp. 2003). One was from the McNamaras, and the other was from
Prudential. On the McNamaras’ disclosure form, the McNamaras checked “no” to the
question of whether they were aware of any “room additions, structural modifications,
or other alterations or repairs made without necessary permits or not in compliance
with building codes in effect at that time.” The disclosure form from Prudential was
signed and dated by Prudential, but on each of the pages, the sections with questions
regarding the condition of the property was marked out with an “X.” 
          On May 4, 2000, the Bynums signed an earnest money contract offer to
purchase the home for $341,000. The Bynums also signed and initialed a five-page
rider that was incorporated as part of the offer. The rider contained the following
statement: “Buyer understands that Seller is a relocation management company and
has never lived in or on the Property. The Property, including the contents, being
sold and purchased are not new, and are being sold ‘as is’ – in their present
condition.” The rider also contained an option period under which the Bynums, after
paying $500.00, could terminate the contract for any reason within five days after the
contract was signed. The rider provided that if the Bynums did not terminate the
contract during the option period, then they were “deemed to have accepted the
Property in its current condition.”


 With regard to the section 5.008 disclosure
statements from the McNamaras and Prudential, the rider provided “BUYER
AGREES THAT BUYER IS NOT RELYING ON THE ACCURACY OF THESE
DOCUMENTS.” Finally, the rider contained a provision stating the following:
Buyer’s (a) failure to notify Seller in writing of any defects within the
time limits provided in this Rider, or (b) acceptance of the Deed at
settlement shall constitute Buyer’s full acceptance of the condition of
the Property and a waiver of Buyer’s right to object to its condition or
assert any claim related to the Property at any time in the future. This
provision shall survive delivery of the Deed and the closing.

          Prudential accepted the Bynums’ earnest money contract offer on May 8, 2000. 
On May 20, 2000, the contract was amended to allow for a few additional terms,
among which was the term that “Buyer accepts the Property in its present condition;
provided Seller, at Seller’s expense, shall complete the following repairs and
treatment: . . .” The parties are not in dispute as to whether Prudential made the
repairs.
          Prior to closing, the Bynums had the home inspected by professional
inspectors. The electrical work, plumbing, and structural modifications performed
during the remodeling, however, were, according to the Bynums, either behind walls,
covered with insulation, or buried in the concrete slab, and, thus, were not readily
subject to inspection. On November 11, 2000, after the closing, and several months
after the Bynums moved into the house, Jimmy Bynum noticed that sewer water was
leaking into the backyard as a shower inside of the house was being run. This
problem was the first of many that were eventually discovered. Upon further
investigation, the Bynums discovered that, because of the absence of a vent pipe,
sewer water was collecting under the master bath and was spilling over the side of the
house into the backyard. The Bynums also found that the areas outside of the hall
bath were “soggy,” which was being caused by a problem with the sewer drainage
from the hall bathroom. In the attic of the home, it was discovered that prohibited
PVC plastic pipe had been used, and that, as a result, a leak had developed, allowing,
what the Bynums contend, is toxic Stachybotrys mold to grow.


 Additionally, the
electrical connections in the bathrooms were not grounded, which created an
electrocution hazard, and the new framing, done after the remodeling, was not
adequately supporting the attic, which caused a crack to appear in a bedroom ceiling.
          The Bynums contend that much of the work performed was in violation of the
codes of the City of Houston, and would have failed inspection by City of Houston
building inspectors. Some of the violations that are alleged by the Bynums to have
occurred in the remodeling of the home include (1) failure to obtain the necessary
plumbing, electrical, and building permits; (2) failure to have licensed electricians
and licensed plumbers do the electrical and plumbing work; (3) prohibited use of
PVC pipe within the home; and (4) prohibited use of an open sewer vent line.
          As a result of the violations and subsequent mold problem, the Bynums vacated
the home, leaving their possessions behind to be treated for mold. The Bynums claim
that the mold caused Clarke and Thomas Bynum to suffer respiratory problems, and
that they are financially unable to repair the defective remodeling performed on the
house.
Standard of Review
          The standard for reviewing a motion for summary judgment is as follows: (1)
the movant for summary judgment has the burden of showing that there is no genuine
issue of material fact and that the movant is entitled to judgment as a matter of law;
(2) in deciding whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the nonmovant will be taken as true; and (3) every
reasonable inference must be indulged in favor of the nonmovant and any doubts
resolved in the nonmovant’s favor. Nixon, 690 S.W.2d at 548-49. A defendant is
entitled to summary judgment if at least one element of each of the plaintiff’s causes
of action is negated as a matter of law. Doe v. Boys Clubs of Greater Dallas, Inc.,
907 S.W.2d 472, 476-77 (Tex. 1995).
          A no-evidence motion for summary judgment is proper when, after adequate
time for discovery, the respondent produces no evidence to support one or more
essential elements on the cause of action specified in the motion. Howell v. Hilton
Hotels Corp., 84 S.W.2d 708, 715 (Tex. App.—Houston [1st Dist.] 2002, no pet.) 
The Validity of the “As Is” Clause
          In issue one, the Bynums argue that the “as is” clause, and the other like
clauses in the Prudential rider or earnest money contract that purport to disclaim
warranties cannot be used to bar their claims against Prudential and the McNamaras
because the clauses (1) are inconspicuous boiler-plate terms entered into by parties
of greatly disproportionate sophistication; (2) are the product of fraudulent
misrepresentation or concealment of information; (3) cannot be used to release a party
from intentional wrongful future conduct; (4) cannot be used to waive DTPA claims;
and (5) cannot be enforced against the Bynum’s minor children.
          The Texas Supreme Court has held that, generally, an “as is” clause will defeat
the element of causation in DTPA, fraud, and negligence claims. Prudential Ins. Co.
of Am. v. Jefferson Assocs., Ltd., 896 S.W.2d 156, 161 (Tex. 1995). When an
agreement to purchase something “as is” is executed, a buyer agrees to make his own
appraisal of the bargain and accept the risk that he may be wrong. Id. The seller
gives no assurances, express or implied, concerning the value or condition of the
thing sold, and the buyer chooses to rely completely on his own determination of the
condition and value of the purchase, removing the possibility that the seller’s conduct
will cause him damage. Id. 
          There are, however, exceptions to the general rule. A buyer is not bound by
an “as is” clause that is the product of fraudulent representation or concealment of
information by the seller. Id. at 162; Smith v. Levine, 911 S.W.2d 427, 431-32 (Tex.
App.—San Antonio 1995, writ denied) (holding that “as is” clause in contract for
purchase of house did not negate element of causation when there was evidence of
affirmative misrepresentations by seller). As the court in the Prudential decision
noted,
A seller cannot have it both ways: he cannot assure the buyer of the
condition of a thing to obtain the buyer’s agreement to purchase “as is”,
and then disavow the assurance which procured the “as is” agreement. 
Also, a buyer is not bound by an “as is” agreement if he is entitled to
inspect the condition of what is being sold but is impaired by the seller’s
conduct. A seller cannot obstruct an inspection for defects in his
property and still insist that the buyer take it “as is.” In circumstances
such as these an “as is” agreement does not bar recovery against the
seller.

Prudential, 896 S.W.2d at 162.

          In determining whether an “as is” clause is enforceable, we must also review
the totality of the circumstances surrounding the agreement. Id. Whether the “as is”
clause is an important part of the basis of the bargain, rather than an incidental
“boiler-plate” provision, and whether the parties have relatively equal bargaining
positions, are factors to consider. Id.; see also Oakwood Mobile Homes, Inc. v.
Cabler, 73 S.W.3d 363, 371-72 (Tex. App.—El Paso 2002, pet. denied) (holding that
seller’s disclaimers did not bind husband and wife purchasers when husband had a
tenth grade education and had never purchased a home before, wife had high school
diploma and one year of college, and the seller was in business of selling homes).
Surrounding Circumstances and Sophistication of the Parties
          The Bynums contend that the “as is” clause and other like disclaimers in the
Prudential Rider and earnest money contract are not binding on them because the
Bynums were “lacking any sophistication in purchasing property or reviewing
contracts,” and because the disclaimers were inconspicuous boiler-plate provisions. 
See Prudential, 896 S.W.2d at 162. 
          We will not dispute the Bynums’ contention that the “as is” clause in the
Prudential rider agreement was a standard boiler-plate provision, but we are not
convinced that the Bynums were so unsophisticated that enforcing the provisions
would be unfair. We agree with the Bynums that Prudential, a large company that
specializes in real estate transactions, has a great amount of sophistication, but the
Bynums did not face Prudential alone. During the Bynums’ dealings with Prudential,
the Bynums were represented by Joan Bynum, a licensed real estate broker with
Greenwood King Properties. Additionally, the Bynums were not strangers to “as is”
contracts. Mr. Bynum testified in his deposition that he had purchased and sold other
properties before buying the home in this case, including property that was purchased
“as is.” Mr. Bynum also testified that he was a manager for Salvage Sale, which was
a company that sold salvaged goods “as is.” Finally, the Bynums, before closing on
the house, had the home inspected by professional inspectors.
          We do not believe that, under these circumstances, the Bynums are entitled to
have the “as is” clause set aside on the grounds that they were unsophisticated
purchasers agreeing to boiler-plate provisions. See id. As for the Bynums’ argument
that the agreement was inconspicuous, there is no dispute that the Bynums were
aware that they were purchasing the house “as is.” Mr. Bynum testified in his
deposition that he read the “as is” clause at the time that he signed the agreement. A
party who, before entering into a contract, has actual knowledge of terms that he later
complains of, is not entitled to escape enforcement of those terms on the ground that
the terms are inconspicuous. See Cate v. Dover Corp., 790 S.W.2d 559, 562 (Tex.
1990); Allied Fin. Co. v. Rodriguez, 869 S.W.2d 567, 571-72 (Tex. App.—Corpus
Christi 1993, no writ). Accordingly, we hold that the Bynums are not entitled to have
the “as is” clause and like disclaimers set aside on the grounds that the terms were
inconspicuous boiler-plate provisions that were agreed to by unsophisticated
purchasers.
Fraudulent Representation and Concealment 
          The Bynums also allege that the “as is” clause is not enforceable because
Prudential and the McNamaras fraudulently misrepresented and concealed material
facts. The Bynums contend that the McNamaras and Prudential knew that the
remodeling was done without the proper permits, but that they purposefully withheld
the information from the Bynums.
          In order to set aside the “as is” clause on the basis of fraudulent
misrepresentation, the Bynums must show actual knowledge of the misrepresentation. 
Prudential, 896 S.W.2d at 162 (“as is” clause could not be set aside on basis of
fraudulent misrepresentation because, while there may have been evidence that
Prudential should have known of property condition, there was no evidence that they
actually knew of condition).
          The Bynums contend that the HDS sent by the McNamaras to Prudential is
some evidence that the McNamaras and Prudential knew that remodeling work had
been done without the necessary permits. We disagree. In the HDS, question 7(a)
was as follows: “were any structural additions, changes, or repairs made to the
property by former owners without obtaining all necessary permits and government
approvals?” The McNamaras answered “no.” Question 7(b) asked “have you made
any structural additions, changes, or repairs to the property?” The McNamaras
answered “yes,” and next to the “yes” box wrote “remodeled bathrooms.” Question
7(c) asked “have you obtained all necessary permits and government approvals?” To
this question, the McNamaras wrote “N/A.” 
          We do not see an inconsistency in the answers given by the McNamaras on the
HDS. The only reasonable interpretation to be given the McNamara’s “N/A”
response to question 7(c) is that they believed that the question was “not applicable”
because no permits were necessary for the remodeling that they admitted having
done. As such, the HDS that the McNamaras provided to Prudential is consistent
with the McNamaras’ representation to the Bynum’s in the § 5.008 disclosure that
they were “not aware” of modifications made without necessary permits. Put simply,
the McNamara’s “N/A” answer does not create a reasonable inference that the
McNamaras knew that permits were necessary, but not obtained.
          Having determined that there is no evidence that Prudential had actual
knowledge that the McNamaras remodeled their home without the required permits,
we now determine if there was any other evidence that the McNamaras had actual
knowledge that the remodeling was performed without necessary permits.
          In the McNamaras’ section 5.008 disclosure form provided to the Bynums, the
McNamaras answered “no” to the question of whether they had knowledge of any
“room additions, structural modifications, or other alterations or repairs made without
necessary permits or not in compliance with building codes in effect at that time.” 
The Bynums argue that the McNamaras made the disclosure with actual knowledge
of its falsity, and cite the following as factors in support of such a finding: (1) the
HDS form submitted to Prudential by the McNamaras shows that the McNamaras
knew that they should have had permits; (2) Mrs. McNamara’s deposition indicates
that she intentionally did not obtain approval for the remodeling from the Civic
Association, which was required under the deed restrictions; (3) the McNamaras
failed to inquire as to the qualifications of Mr. Kindsfather; (4) the McNamaras had
heard of building permits; (5) the McNamaras’ neighbors remodeled their homes with
building permits, and the permits are required to be posted in a window and visible
from the street; and (6) Mr. Kindsfather, who performed the work, allegedly stated
to Mr. Bynum that his standard policy was to tell homeowners about the options of
proceeding either with or without building permits, and the consequences of either
action.
          As an initial matter, we will discuss factors (1) and (6) listed above. As we
have already discussed, the McNamara’s “N/A” response on the HDS does not create
any inference that the McNamaras knew that permits were required, but did not obtain
them. As such, (1) above provides no evidentiary support for the Bynums.
          Similarly, (6) above cannot be considered as evidentiary support for the
Bynums because issue of Kindsfather’s statement was not raised in response to the
motion for summary judgment. Instead, Kindsfather’s alleged statement was offered
to the court in connection with the Bynums’ motion for continuance. When there is
a no-evidence motion for summary judgment, as was the case here, the trial court
must grant the motion unless the respondent produces summary judgment evidence
raising a genuine issue of material fact. Tex. R. Civ. P. 166a(i). In this case, the
Bynums did not produce the affidavit as evidence to support their causes of action;
rather, the affidavit was executed by Mr. Bynum in support of the Bynums’ motion
for continuance. Further, the Bynums, in their written responses to the motions for
summary judgment from Prudential and the McNamaras, never argued that the
alleged statement from Kindsfather was evidence that supported their causes of
action. Accordingly, we will not consider the evidentiary value of the affidavit on
appeal.


 See State Bd. of Ins. v. Westland Film Indus., 705 S.W.2d 695, 696 (Tex.
1986) (holding that, on appeal, non-movant may not raise grounds that it did not raise
in trial court in opposition to motion for summary judgment); City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 674-75 (Tex. 1979).
          Having determined that numbers (1) and (6) do not provide any evidentiary
support for the Bynums, we review the Bynums’ remaining evidence to determine
whether they sufficiently raise a fact question about whether the McNamara’s had
actual knowledge that permits were required, but not obtained. If we consider as true
the Bynums’ evidence that the McNamaras had intentionally declined to obtain
approval from the Civic Association, had failed to inquire as to Kindsfather’s
qualifications, had heard of building permits, and had neighbors that had obtained
building permits, we conclude there is still insufficient evidence to raise a fact issue
about the McNamara’s actual knowledge that their remodeling was done without the
necessary permits. In Prudential, the court held that, even though there was evidence
that Prudential knew that most buildings built in the same era as the building in
question contained asbestos, and even though there was evidence that Prudential
should have suspected the use of asbestos in the building, that evidence was not
evidence that Prudential “actually knew” of the asbestos. Prudential, 896 S.W.2d at
160, 162. 
          In this case, the evidence produced by the Bynums is no more compelling than
the evidence produced by the plaintiff in Prudential. While the evidence might
support the proposition that the McNamaras were careless in remodeling their home
and were aware that building permits existed and were sometimes required for
building projects, there is no evidence that the McNamaras actually knew that they
had remodeled without the necessary permits. See id. Accordingly, we hold that,
because there is no evidence of intentional misrepresentation or concealment by the
McNamaras or Prudential, the Bynums are not entitled to have the “as is” clause set
aside on those grounds.
Intentional Wrongful Future Conduct
          The Bynums argue that the “as is” clause cannot release Prudential or the
McNamaras from liability for their intentional wrongful future conduct. The
intentional wrongful future conduct complained of by the Bynums is the violation of
Prudential and the McNamaras’ continuing obligation to disclose material
information to the Bynums, namely, the HDS furnished by the McNamaras to
Prudential.
          A cause of action exists under the DTPA if a seller fails to disclose information
concerning goods or services which was known at the time of the transaction if such
failure to disclose such information was intended to induce the consumer into a
transaction that the consumer would not have entered into had the information been
disclosed. Tex. Bus. & Com. Code Ann. § 17.46(b)(24) (Vernon 2002). 
          We have already determined that the Bynums produced no evidence showing
that either the McNamaras or Prudential had actual knowledge that the remodeling
was done without necessary permits. Accordingly, there being no evidence of
intentional wrongful conduct, we need not further discuss the Bynums’ contention.
Waiver of DTPA Claims
          The Bynums argue that, even if the “as is” clause is enforceable, it cannot be
used to waive their claims under the DTPA because the “as is” clause does not
comply with the waiver requirements of the DTPA. See Tex. Bus. & Com. Code
Ann. § 17.42(a)-(d) (Vernon 2002).
          A similar argument was made by the appellant in the Prudential decision. The
Prudential court resolved the issue by stating that the “as is” clause is not a waiver
of DTPA rights, such that the waiver provisions of the DTPA need be complied with;
rather, it is a statement that no basis exists for the assertion of such rights. 
Prudential, 896 S.W.2d at 163-64. The court further held that the “as is” clause
indicates the agreement of the buyer that there were no express or implied warranties,
and that the seller’s conduct did not harm, and would not harm him because the buyer
was relying entirely upon his own examination of the property. Id. at 164.
Accordingly, we hold that, here, as in Prudential, the “as is” clause can be used as a
basis for summary judgment against the buyer as to his DTPA claims, and the seller
need not comply with the waiver requirements of the DTPA. 
Applicability of “As Is” Clause to the Bynums’ Minor Children
          The Bynums contend that, because their minor children do not have capacity
to contract and were not parties to the agreement, they should not be bound by the “as
is” clause. 
          Under the DTPA, a plaintiff must have standing as a consumer in order to
assert rights under the DTPA. See Tex. Bus. & Com. Code Ann. § 17.50 (Vernon
2002); Flenniken v. Longview Bank & Trust Co., 661 S.W.2d 705, 706 (Tex. 1983). 
A plaintiff’s standing as a consumer is established by his relationship with the
transaction, not by a contractual relationship with the seller. Kennedy v. Sale, 689
S.W.2d 890, 892-93 (Tex. 1985); Flenniken, 661 S.W.2d at 707; Lukasik v. San
Antonio Blue Haven Pools, Inc., 21 S.W.3d 394, 401 (Tex. App.—San Antonio 2000,
no pet.). A third-party beneficiary can have standing to assert a cause of action under
the DTPA if the transaction was intended to benefit the third party. Lukasik, 21
S.W.3d at 401; see also Wellborn v. Sears, Roebuck & Co., 970 F.2d 1420, 1426-27
(5th Cir. 1992) (son of woman who purchased garage door opener had standing to sue
under the DTPA because the purpose of the purchase was to benefit the son). 
          In this case, even if the Bynum children are intended beneficiaries of the
contract to purchase the home, such that they have standing to sue under the DTPA,
there is no authority cited by the Bynums, or any authority that we could find, that
would support the proposition that the Bynum children, as intended beneficiaries,
would not be bound by the terms to the contract, such that the “as is” clause would
not apply to them. Generally, a third-party beneficiary will not have greater rights
under a contract than the party who bargained for their benefit. See Texas Farmers
Ins. Co. v. Gerdes By & Through Griffin Chiropractic Clinic, 880 S.W.2d 215, 218
(Tex. App.—Fort Worth 1994, writ denied) (third-party beneficiary under an
insurance contract does not have greater rights than the named insured);
Bunnett/Smallwood & Co. v. Helton Oil Co., 577 S.W.2d 291, 295 (Tex. Civ.
App.—Amarillo 1978, no writ) (third-party beneficiary has no greater rights than
those that were promised in the contract). Accordingly, because third-party
beneficiaries are not entitled to greater contractual rights than were bargained for by
the original parties to the contract, we hold that the Bynum children are not entitled
to have the “as is” clause set aside on the ground that they were not parties to the
contract.
Breach of Express and Implied Warranties
          In issue two, the Bynums argue that there is an issue of material fact as to
whether Prudential and the McNamaras breached express or implied warranties. The
Bynums contend that the section 5.008 disclosure form, and the flyer from the
McNamaras’ real estate agent detailing the remodeling done on the home constituted
an express warranty, and an implied warranty was given that the remodeling to the
home they purchased was performed lawfully and with building permits.
Express Warranties
          In evaluating the validity of the “as is” clause in the purchase agreement
between the Bynums and Prudential, we have already held, following the holding of
Prudential, that when a buyer purchases “as is,” he is agreeing that there are no
express or implied warranties, and that the buyer is relying only on his own
examination of the property. Prudential, 896 S.W.2d at 164. Accordingly, we hold
that the Bynums are not entitled to recover under a claim for breach of an express
warranty.



Implied Warranties
          The Bynums also argue that they should be entitled to proceed on a claim for
breach of an implied warranty that the remodeling to the home they purchased was
performed lawfully and with building permits, and that such a warranty cannot be
disclaimed by an “as is” clause.
          The Texas Supreme Court has found that a builder of a residential building
impliedly warrants to the purchaser that the building has been built in a workman-like
manner and is fit for habitation. Humber v. Morton, 426 S.W.2d 554, 555 (Tex.
1968). This implied warranty of habitability from the builder also extends to
subsequent purchasers of the building, but there is no implied warranty from a non-builder seller who sells the building to a subsequent purchaser. Gupta v. Ritter
Homes, Inc., 646 S.W.2d 168, 169 (Tex. 1983). The Texas Supreme Court has also
found an implied warranty that repair or modification services on existing tangible
goods or property will be performed in a good and workman-like manner that,
generally, cannot be waived or disclaimed. Melody Home Mfg. Co. v. Barnes, 741
S.W.2d 349, 355 (Tex. 1987). In Melody, the purchaser of a mobile home from
Melody Home Manufacturing Co. discovered serious defects in the home. Id. at 351. 
Workmen from Melody Home came out to try to fix the problems, but their attempts
to repair the home only caused greater problems. Id. In holding that Melody Home
could be sued for breach of an implied warranty, the court stated that “we do not
require the repairmen to guarantee the results of their work; we only require those
who repair or modify existing tangible goods or property to perform those services
in a good and workman-like manner.” Id. at 355. 
          In this case, neither the McNamaras nor Prudential were builders of the home
that was purchased by the Bynums. Accordingly, the Bynums do not have a cause of
action against those parties for breach of an implied warranty of habitability. Gupta,
646 S.W.2d at 169. Likewise, the Bynums cannot sue the McNamaras or Prudential
for breach of an implied warranty that repairs or modifications of existing goods
would be performed in a good and workmanlike manner, because it was Kindsfather
who remodeled the home, not the McNamaras or Prudential. See Melody, 741 S.W.2d
at 355 (implied warranty applies to “repairmen” and “those who modify or repair
existing tangible goods”). There being no authority of which we are aware that
would allow us to expand the scope of the implied warranty created in Melody, we
decline to do so, and, accordingly, we hold that the Bynums are not entitled to recover
against Prudential or the McNamaras for breach of an implied warranty.



          We overrule issue two.
Relief Under Section 5.008 of the Texas Property Code
          In issue three, the Bynums argue that, because Prudential has not yet complied
with section 5.008 of the Texas Property Code, which requires, among other things,
disclosure of whether the seller has knowledge of alterations or repairs that were
made without necessary permits, the Bynums are entitled to terminate the purchase
transaction and recover all monies paid. See Tex. Prop. Code Ann. § 5.008.
          We have already determined that there was no evidence that either the
McNamaras or Prudential had actual knowledge that the remodeling of the home was
done without necessary permits. To the extent that the Bynums are arguing that
section 5.008 imposes a continuing obligation on the McNamaras and Prudential to
disclose information on matters in the section 5.008 form as the information becomes
known to them, the express language of section 5.008 suggests otherwise. Section
5.008(d) provides the following:
The notice shall be completed to the best of the seller’s belief and
knowledge as of the date the notice is completed and signed by the
seller. If the information required by the notice is unknown to the seller,
the seller shall indicate that fact on the notice, and by that act is in
compliance with this section.

Tex. Prop. Code Ann. § 5.008(d) (emphasis added). Accordingly, because section
5.008 requires only that the form be completed to the best of the seller’s belief at the
time the notice is completed and signed, the Bynums’ argument that Prudential had
an obligation under section 5.008 to provide continuing updates as to matters within
the form is without merit. There being no evidence of a violation of section 5.008,
the Bynums are not entitled to relief under that section.



          We overrule issue three.
Relief Under the Equitable Doctrine of Rescission
          In issue four, the Bynums argue that they are entitled to a rescission of the
purchase of their home because of a mutual, or, alternatively, a unilateral mistake as
to the condition of the home. See Williams v. Glash, 789 S.W.2d 261, 264 (Tex.
1990) (mutual mistake); James T. Taylor & Son, Inc. v. Arlington Indep. Sch. Dist.,
335 S.W.2d 371, 372-73 (Tex. 1960) (unilateral mistake). 
          One of the grounds for summary judgment raised by Prudential was that
rescission was not available to the Bynums because the Bynums had not timely
attempted to rescind the contract after moving into the home. See Winters v. Coward,
174 S.W. 940, 940-41 (Tex. Civ. App.—San Antonio 1915, no writ). The Bynums
have not attempted to negate that ground for summary judgment on appeal. 
Accordingly, we will affirm the trial court’s grant of summary judgment for
Prudential as to the Bynums’ claim for rescission. Ellis v. Precision Engine
Rebuilders, Inc., 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.)
(when multiple grounds are asserted in motion for summary judgment, and summary
judgment order does not specify the grounds on which summary judgment was
rendered, appealing party must, on appeal, negate all grounds asserted in the motion).



          We overrule issue four.
Negligent Misrepresentation and Statutory Fraud
          In issue five, the Bynums argue that, even if intentional misrepresentation
cannot be shown, there is a genuine issue of material fact as to whether Prudential and
the McNamaras engaged in negligent misrepresentation or fraud under section 27.01
of the Texas Business and Commerce Code. See Tex. Bus. & Com. Code Ann. §
27.01 (Vernon 2002).
          Both statutory fraud under section 27.01 and negligent misrepresentation
require the plaintiff to prove that he relied on the misrepresentation. See Tex. Bus.
& Com. Code Ann. § 27.01(a)(1)(B); Federal Land Bank Ass’n v. Sloane, 825
S.W.2d 439, 442 (Tex. 1991). 
          In this case, because the Bynums’ purchase agreement contained a valid “as is”
clause, the Bynums cannot prove that they relied on the representations made by
Prudential or the McNamaras. See Prudential, 896 S.W.2d at 161 (“as is” clause is
a “contractual disavowal of reliance”). Accordingly, summary judgment against the
Bynums as to those two claims was proper.
          We overrule issue five.
Negligence Per Se
          In issue six, the Bynums argue that the trial court erred in denying their motion
for partial summary judgment against the McNamaras on their claim of negligence
per se. 
          The Bynums allege that the McNamaras were negligent per se in remodeling
their home without the necessary permits. Even if we were to assume, which we do
not, that the McNamaras were negligent per se, the Bynums would still have to prove
the element of causation in order to prevail. See Nixon, 690 S.W.2d at 549. 
Generally, in a real estate purchase, when the purchase agreement contains a valid “as
is” clause, the purchaser cannot later claim that they were injured by negligent
conduct of the seller because the purchaser has agreed that he is making the purchase
in reliance only on his own inspection of the property. Prudential, 896 S.W.2d at 163
(element of causation in purchaser’s negligence claim negated by a valid “as is”
clause). Accordingly, because we have determined that the Bynums’ purchase
agreement contained a valid “as is” clause that negates the element of causation in the
Bynums’ negligence per se claim, we hold that the trial court did not err in denying
the Bynums’ motion for partial summary judgment on their claim of negligence per
se against the McNamaras.
          We overrule issue six.
Motion for Continuance
          In issue seven, the Bynums argue that the trial court erred in denying the
Bynums’ motion for continuance.
          The Bynums cite no legal authority to support their proposition that the trial
court erred in denying their motion for continuance. Accordingly, we hold that the
issue has been waived because of inadequate briefing. Tex. R. App. P. 38.1(h); see
Fredonia State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994). 
 
 
 
 
 
 
 
 
          We overrule issue seven.
Conclusion
We affirm the trial court’s judgment.
 
 
                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Alcala and Higley.